IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERNEST VADEN,

      Plaintiff,                              No. CIV S-06-1836 GEB KJM P

    vs.

OFFICER SUMMERHILL, et al.,

      Defendants.                        FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. He alleges defendants Summerhill, St. Andre, Gower and Chapman ignored plaintiff's warning that he and his cellmate were incompatible and would come to blows and that before plaintiff was moved, he and his cellmate fought. Defendants have moved for summary judgment on three grounds: they were not deliberately indifferent to a substantial risk of harm, plaintiff sustained no injury, and they are entitled to qualified immunity.

I. Summary Judgment Standards Under Rule 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
2  1436 (9th Cir. 1987).

3  In the endeavor to establish the existence of a factual dispute, the opposing party
4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
9  committee's note on 1963 amendments).

10  In resolving the summary judgment motion, the court examines the pleadings,
11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
12  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
13  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
14  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
16  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
18  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
19  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
21  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22  On May 25, 2007, the court advised plaintiff of the requirements for opposing a
23  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
24  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.
25  Eikenberry, 849 F.2d 409 (9th Cir. 1988).
26  /////

## II. Facts

In April and May 2003, plaintiff was housed in B-Facility, Building Five, High Desert State Prison (HDSP). Defs.' Statement of Undisputed Facts (SUF), Ex. F, Declaration of S.L. Chapman (Chapman Decl.) ¶ 3. Early in that period, plaintiff shared a cell with inmate Anthony Washington, T-54933. SUF, Ex. B, Housing Information at 3;[1] Deposition of Ernest Vaden (Vaden Depo.) at 26:18-19. Plaintiff had a chrono for a bottom bunk, but Washington did not want to change to the top bunk, so they were housed together only for a short period of time.[2] SUF, Ex. B, Housing Information at 3; Vaden Depo. at 27:21-24. During this brief period, plaintiff had no problems with Washington. Vaden Depo. at 27:20.

After this short stay in cell 102, plaintiff returned to cell 124, with inmate Thompson, J-80634. SUF, Ex. B, Housing Information at 3; Vaden Depo. at 29:3-4.

In April and May 2003, defendant Summerhill was a floor officer in B-Facility, Building 5. SUF, Ex. C, Declaration of K. Summerhill (Summerhill Decl.) ¶ 2. On April 20, plaintiff's cell-partner, Thompson, asked Summerhill for a convenience move, which would have returned plaintiff to cell 102 with Washington. Summerhill Decl. ¶¶ 3-4. Summerhill denied the request because Thompson had requested plaintiff as a cell partner only a month earlier. Summerhill Decl. ¶ 5.

The next day, at Sergeant Nine's direction, plaintiff was moved back to cell 102 with Washington, who had agreed to give plaintiff the lower bunk. SUF, Ex. B, Housing

---

[1] The cell movement history attached to the motion as Exhibit B is not properly authenticated as a business record. As plaintiff has admitted the gist of what these records show, the court will rely on them in resolving this motion. See Hal Roach Studios v. Feiner, 896 F.2d 1542, 1551 (9th Cir.1989).

[2] The movement sheet suggests plaintiff and Washington were housed together in cell 102 only for a day during this initial period; plaintiff says it was no more than five days. Compare SUF, Ex. B, Housing Information at 3; Vaden Depo. at 28:23-24.

Information at 3; Summerhill Decl. ¶¶ 4, 8;[3] Vaden Depo. at 30:20-22. The following day, plaintiff was issued a rules violation for manipulation of staff for bed moves. Summerhill Decl. ¶ 9.

Plaintiff quickly learned that he and Washington were not compatible. Plaintiff, a thirty-three year old Muslim, prayed five times a day; eighteen year old Washington listened to "loud obscene rap music" all day and cursed when plaintiff prayed. Amended Complaint (Am. Compl.) at 1;[4] Vaden Depo. at 25:6-10. Plaintiff believed that "some violence [was] going to happen" if they were cellmates for any length of time. Am. Compl. at 5;[5] Vaden Depo. at 25:5-6.

In 2003, defendant Gower was a correctional lieutenant on B-Facility. SUF, Ex. G, Declaration of R. Gower (Gower Decl.) ¶ 2. On May 13, Gower talked to plaintiff about a grievance he had filed; plaintiff requested a bed move. Gower Decl. ¶ 4; Vaden Depo. at 31:21-23. According to plaintiff, defendant St. Andre, who was a correctional sergeant in B Facility, was also present. Vaden Depo. at 32:6-7; SUF, Ex. H, Declaration of R. St. Andre (St. Andre Decl.) ¶ 2.

Gower told plaintiff he should talk to the floor officer or sergeant because Gower handled bed moves only to lock up an inmate. Gower Decl. ¶ 4; Vaden Depo. at 32:22-25. Gower also told plaintiff to find a cell partner and then work it out with staff. Gower Decl. ¶ 5. According to Gower, plaintiff did not say he feared for his safety; if he had, Gower would have
/////

---

[3] Summerhill avers she recorded this information in the B-Facility Log Books. Defendants have attached some pages, purportedly from this log book, as Exhibit E. These are not authenticated. Defendants obtained them from plaintiff during his deposition, Vaden Depo. at 66:8-12, and plaintiff has not objected to them.

[4] The amended complaint is signed under the penalty of perjury and so may be deemed an affidavit for purposes of summary judgment. California Pro-Life Council, Inc. v. Randolph, 507 F.3d 1172, 1176 (9th Cir. 2007). The court refers to the pages attached to the complaint form.

[5] Pagination reflects the page numbers assigned by the court's CM/ECF system.

put plaintiff in administrative segregation. Id. ¶¶ 7-8. In fact, plaintiff and Washington agreed they could get along for a few days unless a convenience move could be arranged. Id. ¶ 6.[6]

St. Andre does not recall plaintiff asking for a cell move or saying there would be violence if he were not moved; had plaintiff said he was in danger, plaintiff would have been interviewed and a determination would have been made whether a cell move was appropriate. St. Andre Decl. ¶ 7. In general, though, St. Andre would refer an inmate requesting a convenience move to building staff. Id. ¶ 6. Plaintiff reports St. Andre as saying "he couldn't do it." Vaden Depo. at 56:20-21.

According to plaintiff, he told Gower and St. Andre that he felt threatened and that some violence would happen soon if he was left in the cell because of the conflict between his prayers and Washington's music. Vaden Depo. at 32:11-16, 56:20-24.

On May 19, 2003, plaintiff told Summerhill that he and Washington might fight and asked to move into a cell with one of the unit's porters. Summerhill Decl. ¶ 10; Vaden Depo. at 25:3-10, 33:9-11. Summerhill suggested he wait for a convenience move because he had received a write-up for staff manipulation as the result of his earlier move. Summerhill Decl. ¶ 10.

In 2003, defendant Chapman was a correctional lieutenant on B Facility. SUF, Ex. F, Declaration of S.L. Chapman (Chapman Decl.) ¶ 2. On May 19, plaintiff asked Chapman about a bed move, but Chapman referred him back to the building officer, saying that convenience moves were facilitated by the building staff. Chapman Decl. ¶ 4; SUF, Ex. E (B-5 Log Book) at 4. Plaintiff alleges that Chapman told him to return to his cell and "handle it like men." Vaden Depo. at 55:22-24. According to Chapman, plaintiff did not say he feared for his safety; if he had, Chapman would have had plaintiff placed in administrative segregation. Chapman Decl. ¶¶ 5-6.

---

[6] This statement in Gower's declaration is in the passive voice, so it is unclear whether plaintiff made this statement to Gower or to someone else.

The Log Book entry for 18:45 on May 19 notes that plaintiff spoke to defendant Chapman at chow time; it also records that plaintiff "is stating he and Washington his cellie are not getting along and they may fight or not lock up during Dayroom." SUF, Ex. E at 4; Vaden Depo. at 34:2-4. It is not clear from this entry whether plaintiff told Chapman that he and Washington might fight or whether he told the person who made the entry, defendant Summerhill. SUF, Ex. E at 4.

Summerhill asked Chapman if he had authorized a cell move for plaintiff. Chapman said the decision whether to move plaintiff was up to floor staff but that it was too late in the evening. Summerhill Decl. ¶ 11. Summerhill spoke again to plaintiff and told him she would try to arrange another convenience move for him when she returned to the building on May 23. Id. ¶ 12. Both plaintiff and Washington assured her "that they could get along" until Summerhill returned. Id.

On May 22, 2003, Washington attacked plaintiff from behind as they left the cell and hit him on the back of the head. Vaden Depo. at 11:14-21. Washington hit plaintiff three or four more times, in the chest. Id. at 13:7-9. Guards used pepper spray and pulled them apart. Id. at 14:8-10. Plaintiff was taken to the medical clinic and when asked about his injuries said, "I'll wait to tell it in court." SUF, Ex. I at 22. The examiner wrote, "no injuries noted or stated." Id.

The day after the assault, St. Andre told plaintiff that Washington was a "problem dude" with a history of assaulting his cellmates. Vaden Depo. at 52:19-53:4; Am. Compl. at 9.

III. Failure To Protect

In Farmer v. Brennan, 511 U.S. 825, 833 (1994), the Supreme Court confirmed what the Courts of Appeal had "uniformly held": "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners'" under the Eighth Amendment. A prison official is not liable, however, "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

/////

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. The Court continued:

> Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of the obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

Id. at 842-43. In a footnote, the Court added that a prison official "would not escape liability if the evidence showed he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist (as when a prison official is aware of a high probability of facts indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation) . . ." Id. at 843 n.8. However

> prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

Id. at 844. The ultimate test is whether the prison official acted reasonably in light of his knowledge; if he did, he is not liable under the Eighth Amendment even if the prisoner is harmed. Id. at 844.

The Ninth Circuit explored the nature of the duty to protect in Berg v. Kincheloe, 794 F.2d 457 (9th Cir. 1986). Berg claimed he had been placed in protective custody because his

8

life was in danger and that he told Marsh, a prison official, he would be in even greater danger if he went to his job as a tier porter. Marsh ignored his protest and sent him to work, where he was beaten and raped. The Ninth Circuit reversed the district court's grant of summary judgment because the pro se complaint, read liberally, stated a prima facie cause of action. The court observed:

> The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to present such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.

Id. at 459 (internal citation and quotation omitted). It has also recognized that an Eighth Amendment violation may be established by a showing that (1) the deprivation alleged is sufficiently serious from an objective point of view and (2) the prison officials had a sufficiently culpable state of mind, synonymous with deliberate indifference. Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

        A.  Objective Element

Defendants argue that plaintiff cannot satisfy the objective portion of the Farmer inquiry because he does not allege he sustained any injuries in the altercation with Washington. Defs.' Mem. P. & A. in Supp. Mot. Summ. J. (MSJ) at 6. They rely on Babcock v. White, 102 F.3d 267, 270 (7th Cir. 1996), which considered the question whether an inmate "who was not assaulted by, and who is no longer at risk from, fellow inmates may nevertheless maintain a . . . claim for money damages based solely on prison officials' past failure to take measures to protect the prisoner . . . ." In Babcock, the plaintiff was threatened but not physically attacked by

/////
/////
/////
/////
/////

members of the Mexican Mafia housed in the institution, so the court considered "the injury element" of the plaintiff's Eighth Amendment claim. It concluded:

> However legitimate Babcock's fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment. Babcock's claim of psychological injury does not reflect the deprivation of "the minimal civilized measures of life's necessities."

Id. at 272 (internal citation omitted). Babcock did not hold that a failure to protect claim based on a physical assault cannot be maintained without proof of some quantum of physical injury. It does not control the resolution of this case, for it does not establish a backward-looking test for determining whether, at the time of the alleged failure to protect, the plaintiff faced a sufficiently serious deprivation.

The Fifth Circuit has also considered what constitutes the "substantial risk of serious harm" in Eighth Amendment jurisprudence:

> Our society does not tolerate . . . physical assaults. Although Horton threw the first punch in the initial altercation with Jackson, he arguably did so in self defense, because of the alleged threats of extortion and assault. Furthermore, the second assault by Jackson at the watercooler was apparently unprovoked. Although Horton did not sustain serious injuries, he could have been severely injured . . . . This is arguably the type of "imminent danger" against which a prison official must protect. Thus, Horton's complaint meets its burden for the first element of the Eighth Amendment claim.

Horton v. Cockrell, 70 F.3d 397, 401 (5th Cir. 1995).

Plaintiff alleges he told the four defendants that he and Washington were not compatible because of their different world views and habits and that if one of them were not moved, there would be violence. As the Horton court recognizes, the Eighth Amendment "is intended to protect against both present and future dangers to inmates." Id. Summerhill acknowledges that plaintiff made this report to her; the other defendants deny that plaintiff said anything to put them on notice of the threat. The objective element of the Farmer inquiry is established as to defendant Summerhill and disputed as to the other defendants.

B. <u>Subjective Element</u>

If the defendants acted reasonably in response to the risk plaintiff faced, then they did not act with the culpable state of mind necessary to an Eighth Amendment claim. <u>Farmer v. Brennan</u>, 511 U.S. at 844. Defendants argue that none of them acted with deliberate indifference because they had nothing more than "a mere suspicion" that any attack would occur. MSJ at 7.

According to Summerhill, both plaintiff and Washington assured her they could get along for several days until she returned to duty and could work out a convenience move for one of them. Summerhill Decl. ¶ 12. Plaintiff does not dispute that he and Washington said this. In light of these assurances, it was reasonable for Summerhill to wait for a few days before attempting to arrange another convenience move for plaintiff. She did not act with a sufficiently culpable state of mind so as to violate plaintiff's Eighth Amendment rights.

Defendants Chapman and Gower suggest that plaintiff made the same assurance to them. <u>See</u> MSJ at 7 & SUF Nos. 14-15. Chapman's declaration does not report that plaintiff and Washington made these assurances to Chapman or that Summerhill reported to him what she learned, and the entry in the log book does not report without ambiguity that plaintiff assured Chapman he could get along with Washington for a few days. <u>See generally</u> Chapman Decl. & SUF, Ex. E at 4. Nevertheless, Chapman is entitled to summary judgment as well. According to Chapman's declaration, plaintiff did not tell him that he felt threatened. Chapman Decl. ¶¶ 5-6. Plaintiff does not counter this assertion with specific facts: in his amended complaint, he says only that he notified Chapman "of the circumstances described in the above." Am. Compl. at 7. However, "the circumstances described above" include his notice to Summerhill that "he felt threatened for his safety," that the atmosphere between himself and Washington was tense, and that he lived in constant fear. Am. Compl. at 5-6. He does not specify, however, whether he told Chapman <u>all</u> of the circumstances described above or only some of them. His deposition testimony is equally vague, for he says only that he talked to Chapman about a cell move and that he and Washington were having problems. Vaden Depo. at 20:3-16, 33:3-4.

As the Supreme Court has recognized,

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990) (internal citations omitted). Plaintiff has failed to counter Chapman's averment with "at least one sworn averment of that fact."

Gower's declaration also reports that plaintiff and Washington agreed they could get along for a few days, but as noted above, the statement is reported in the passive voice, making it impossible for the court to determine whether Gower heard this directly or otherwise learned it during the relevant time period. Even so, Gower is entitled to summary judgment as well, for the undisputed facts show he did not have a sufficiently culpable state of mind. According to both plaintiff and Gower, when asked about a cell move, Gower told plaintiff to work something out with the floor staff. Gower Decl. ¶ 4; Vaden Depo. at 32:22-25. Plaintiff has submitted nothing suggesting this was an unreasonable response, coming as it did during a discussion of the disciplinary for manipulation of staff, or that Gower, rather floor staff, had primary responsibility for cell moves, or that Gower had any reason to believe floor staff would not respond to plaintiff's requests. Moreover, plaintiff has submitted nothing suggesting Gower was aware that Washington had a history of assaults or other violence against cell mates.

/////

Plaintiff has not rebutted Gower's showing that his response was reasonable, albeit ultimately mistaken.  Gower is entitled to summary judgment.

Defendant St. Andre is not entitled to summary judgment on the Eighth Amendment claim.  Plaintiff has averred that St. Andre was present when plaintiff told Gower he feared for his safety and that "some violence would happen soon" if he were not moved.  Vaden Depo. at 32:11-16, 56:20-24.  Plaintiff also has averred that a day after the assault, St. Andre told him that Washington was a "bad dude" with a history of assaultive behavior against cell mates.  Vaden Depo. at 52:19-53:4.  St. Andre does not recall plaintiff mentioning that he felt threatened, but does not counter plaintiff's claim that he was present when plaintiff made this disclosure.  Moreover, St. Andre also fails to address plaintiff's claim that St. Andre was aware of Washington's record of assaults against cellmates.  St. Andre has not shown plaintiff will be unable to establish this element of his claim as to him.

IV.  Actual Injury Requirement Of The PLRA

Defendants argue that plaintiff cannot recover damages for emotional distress without a showing of physical injury, which he has not made.  MSJ at 8.  They base their argument on 28 U.S.C. § 1997e(e), which provides that "no federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Id.

In Oliver v. Keller, 289 F.3d 623, 627-28 (9th Cir. 2002), the Ninth Circuit determined that a claim for mental and emotional injury could not be maintained without a showing of some injury, which need not be significant but must be more than de minimis injury.  However, the provisions of the Prison Litigation Reform Act (PLRA) limiting recovery do not apply to allegations of constitutional violation that are not based on mental or emotional injury.  Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003) (action may proceed on Eighth Amendment claim even though no physical injury); Oliver v. Keller, 289 F.3d at 629-30; Cockcroft v. Kirkland, 548 F.Supp.2d 767 (N.D. Cal. 2008) (although Oliver is not "a model of

clarity," it recognized that the violation of a constitutional right has compensatory value whatever the level of injury). To the extent plaintiff seeks damages for the violation of his rights, apart from any emotional injury, he may proceed with the action if his complaint states a claim. In addition, plaintiff may pursue an Eighth Amendment claim based on the wanton infliction of psychological pain. Calhoun, 319 F.3d at 939.

## V. Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court must answer two questions. The first is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). A negative answer ends the analysis, with qualified immunity protecting defendant from liability. Id. If a constitutional violation occurred, a court must further inquire "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

In Brosseau, the Supreme Court emphasized that "the qualified immunity inquiry must be undertaken in light of the specific context of the case." Id. In that case, the defendant police officer had shot a fleeing felon in the back. The Court found that case law clearly established that in a case involving excessive force "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm," the outcome depends very much on the specific facts of each case. Id. at 197-98, 201. Therefore, the Court held that because the

/////

officer's actions fell "in the 'hazy border between excessive and acceptable force,'" the officer was entitled to qualified immunity. Id. at 201 (internal citation omitted).

In Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002), the Ninth Circuit considered the interaction between an Eighth Amendment failure to protect claim and qualified immunity, recognizing that the subjective portion of the test "does not fit easily with the qualified immunity inquiry." It observed that:

> [A] reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, yet reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity.

Id. at 1050. Relevant to the inquiry is the fact that "neither *Farmer* nor subsequent authorities has fleshed out 'at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." Id. at 1051. Thus, it may not be clear when a tense cellmate situation changes from "*a* risk of *some* harm to a *substantial* risk of *serious* harm." Estate of Ford, 301 F.3d at 1051 (emphasis in original).

As noted above, the facts alleged show that defendant St. Andre violated plaintiff's Eighth Amendment rights. Moreover, the law on an official's duty to protect inmates was elucidated in Farmer, 511 U.S. at 842-43.

The question is whether, viewing the facts in the light most favorable to plaintiff, a reasonable officer in St. Andre's situation would have strongly suspected that refusing to move plaintiff subjected him to a substantial risk of serious harm. According to plaintiff, St. Andre was aware of Washington's history of poor relations with cellmates, a history that included assaults. Vaden Depo. at 52:19-53:4; Am. Compl. at 9. Because the details of this history are not fleshed out, there is nothing in the record suggesting St. Andre knew Washington had a history of assaulting Muslim inmates, for example, as opposed to assaulting inmates with a different gang affiliation, for other reasons or for no reason at all.

/////

1    Also, according to plaintiff, he told St. Andre that "you all leave us in that cell, man, something gonna happen.  I believe it was gonna happen soon," but St. Andre said "he couldn't do it."  Vaden Depo. at 56:20-24.  Nothing in plaintiff's prediction suggests he gave defendant any specifics: he did not say that Washington had threatened him, had pushed him, had made any gestures predictive of violence, and offered nothing suggesting the floor staff would be unable to monitor and deal with any escalating tension between the cellmates.

Because the point at which a risk to an inmate becomes a substantial risk of serious harm for Eighth Amendment purposes is ill-defined and because St. Andre's actions fall into this hazy area, he is entitled to qualified immunity.  Brosseau, 543 U.S. at 201.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (docket no. 35) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 23, 2008.

_____
U.S. MAGISTRATE JUDGE

2/vade1836.57